RECORDING REQUESTED BY:
Bank of America, N.A.
Attn: Home Retention Division: CA6-919-02-46
400 NATIONAL WAY
Simi Valley, CA 93065

Loan #: 3477870315154423059

This document was prepared by _____ Walled Lake Credit Bureau, LLC _____

_____ SPACE ABOVE THIS LINE FOR RECORDER'S USE _____

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), effective on the date set forth below, between John Cooper, (the "Borrower(s)") and Bank of America, N.A. the servicer and/or lender for your loan ("Lender") amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the 7th of March, 2008 and in the amount of $288,000.00 and (2) the Note bearing the same date as, and secured by, the Security Instrument (the "Note") which covers the real and personal property described in the Security Instrument and defined therein as in the "Property", located at 10828 Kilpatrick Lane, Glen Allen, VA 23059.

If my representations in Section 1 below continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3 below, amend and supplement (1) Security Instrument on the Property and (2) the Note secured by the Security Instrument, and any previous modifications to the Security Instrument and/or Note. The Security Instrument and Note together, as they may previously have been amended, are referred to as the "Loan Documents". Capitalized terms used in this Agreement and not defined here have the meaning given to them in the Loan Documents.

(page 1 of 10 pages)



PKG_2/C3_3477-6

I have received three copies of this Agreement. After I sign and return two copies of this Agreement to Lender, I will retain the other copy for my records. This Agreement will not take effect unless the preconditions set forth in Section 2 below have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

   I am experiencing a financial hardship, and as a result, (1) I am in default under the Loan Documents or my default is imminent, and (2) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

   A. The property is currently owner occupied or is a rental property which is: (x) currently rented as a principal residence, (y) vacant and available for rent, or (z) occupied by the borrowers direct relative (parent, grandparent or legal dependent) as a principal residence without rent. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow.

   B. I have provided documentation for all income that I receive that I am required to disclose, and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for this Loan Modification ("Modification").

   C. Under penalty of perjury, all documents and information that I (or any third party on my behalf) have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Modification, are true and correct to the best of my information and belief.

   D. I have made all payments required under a trial period plan or loan workout plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 below, Lender determines that any of my representations in Section 1 above are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, Lender will have all of the rights and

(page 2 of 10 pages)



PKG_2/C3_3477-6

remedies provided by the Loan Documents; and

B. I understand that the Loan Documents will not be modified unless and until (1) I return a signed and notarized (if required) copy of this Agreement to Lender, (2) the Lender accepts this Agreement by signing it, (3) and for borrowers in active bankruptcy, the bankruptcy court approves it, and (4) the Modification Effective Date (as defined in Section 3 below) has occurred.

3. The Modification. If all of my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 above have been met, the Loan Documents will automatically become modified on 04/01/2015 (the "Modification Effective Date").

A. As part of this Modification, I agree that all amounts and arrearages that are or will be past due as of the Modification Effective Date, including unpaid and deferred interest, fees, charges, escrow advances, and other costs, but excluding unpaid late charges, (collectively "Unpaid Amounts") less any amounts paid to Lender but not previously credited to my Loan, will be added to the current principal balance of the Note. This combined principal balance will be $299,653.60 (the "Combined Principal Balance"). Any fees or charges incurred in connection with the servicing of your loan which were not invoiced before we calculated the Unpaid Amounts will appear on your monthly statement under "Fees and Charges." These amounts may be paid when billed or at any time afterward. They will not accrue interest or late fees. If they remain unpaid, they must be satisfied at the earlier of: (i) the date you sell or transfer an interest in the Property, (ii) the date you pay the entire New Principal Balance, or (iii) the Maturity Date. I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement unless those amounts are either deferred as non-interest bearing or forgiven as specified in this Agreement.

B. $108,903.59 of the Combined Principal Balance is hereby permanently forgiven, and will be deducted from the unpaid principal balance. I further acknowledge that Lender may be required to report the amount of principal forgiveness to the IRS and that any tax liability arising out of that forgiveness shall be my responsibility. I further acknowledge that Lender has recommended that I consult my own tax advisor to determine how this forgiveness impacts my personal situation.

C. As of the Modification Effective Date the principal balance of the loan that

(page 3 of 10 pages)



PKG_2/C3_3477-6

remains due and payable is $190,750.01 (the "New Principal Balance").

D. Interest at the rate of 2.000% will begin to accrue on the New Principal Balance as of 03/01/2015, and the first new monthly payment on the New Principal Balance will be due on 04/01/2015. My payment schedule for the modified loan is as follows:

| Months | Interest Rate | Type of Payment | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|---|---|---|---|---|---|---|
| 347 | 2.000% | Principal and Interest | $724.35 | $285.60 may adjust periodically | $1,009.95 may adjust periodically | 04/01/2015 |

* The total monthly payment amount shown does not include any fee for optional Borrowers Protection Plan or the cost for any other optional products that may be on the loan.

* If escrow payments are collected by Lender, Lender may adjust such payments periodically in accordance with applicable law. Therefore, my total monthly payment may change accordingly.

The terms in this Section 3.D. supersede any provisions to the contrary in the Loan Documents, and previous loan modifications including (but not limited to) provisions for an adjustable or interest-only rate.

E. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

4. Additional Agreements. Lender and I agree to the following:

A. All persons, or their authorized representative(s), who signed the Loan Documents have signed this Agreement, unless (1) a borrower or co-borrower is deceased; (2) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, meaning that the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (3) Lender has waived this requirement in writing. This Agreement may be executed in separate counterparts, each of which shall be deemed an original.

(page 4 of 10 pages)


81-416298

PKG_2/C3_3477-5

B. This Agreement supersedes the terms of any modification, forbearance, trial period plan, or loan workout plan that I previously entered into with Lender.

C. I will comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of the Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments, the amount of which may periodically change over the term of my Loan.

D. The Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

E. All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. Except as otherwise specifically provided in, and as expressly modified by, this Agreement, Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

F. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.F. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for

(page 5 of 10 pages)



PKG_2/C3_3477-6

all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.F.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

G. On and after the Modification Effective Date, and notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, Lender shall not exercise this option if state or federal law, rules, or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Security Instrument. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand, to the extent such action is not prohibited by applicable state and federal law.

H. On and after the Modification Effective Date, Lender will allow the transfer and assumption of the Loan, including this Agreement, only to a transferee of my property as permitted under the Garn-St Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

(page 6 of 10 pages)


81-416296

PKG_2/C3_3477-6

I. On and after the Modification Effective Date, any provision in the Note (or in any addendum or amendment to the Note) that allowed for the assessment of a penalty for full or partial prepayment of the Note, is null and void.

J. I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by Lender's procedures to ensure that the modified mortgage loan is in first-lien position and/or is fully enforceable upon modification. Under any circumstance and not withstanding anything else to the contrary in this Agreement, if Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s), the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void. I will allow Lender to attach an Exhibit to this Loan Modification that will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk's Office to allow for recording if and when recording becomes necessary for Lender.

K. I will execute such other documents as may be reasonably necessary either to (1) consummate the terms and conditions of this Agreement; or (2) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. If I elect not to sign any such correction documents, the terms of the original Loan Documents, or the most recent modified terms currently in effect, shall, at Lender's sole option, continue in full force, and the terms of the original Loan Documents, or the most recent modified terms currently in effect, will not be modified by this Agreement.

L. Any optional product(s) I may have purchased after the original closing of my Loan, the cost for which I agreed to have added to my Total Monthly Payment, will (1) remain in force as long as I add the amount due and owing to my Total Monthly Payment each month and (2) continue to be governed by the terms of the documents the provider of the optional product delivered to me ("Governing Documents"), unless I (a) notify the provider of the optional product of my request to cancel; or (b) fail to pay any and all amounts payable when due, at which time the optional product may terminate as provided under the Governing Documents. If I have questions about any optional product(s) I may have purchased, I should contact Bank of America, N.A.

M. I agree and consent to the disclosure of my personal information and the terms of this Modification Agreement by Lender or its agents to (a) governmental

(page 7 of 10 pages)


81-416296

PKG_2/C3_3477-6

authorities, including the U.S. Department of the Treasury and Department of Justice, and their agents, (b) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services this Loan or any subordinate lien on the Property; (c) companies that perform support services in conjunction with this Modification and (d) any HUD-certified housing counselor.

(page 8 of 10 pages)



81-415295

PKG_2/C3_3477-6

In Witness Whereof, the Lender and I have executed this Agreement.
(Signatures must be signed exactly as printed, original signature required, no photocopies accepted)

_[signature]_
John Cooper
(Must Be Signed Exactly As Printed)

04/08/15
MM/DD/YYYY

(page 9 of 10 pages)



81-416295

PKG_2/C3_3477-6

**DO NOT WRITE BELOW THIS LINE.**

****************************************************************************************

THIS SECTION IS FOR INTERNAL USE ONLY

Bank of America, N.A., for itself or as successor by merger to BAC Home Loans Servicing, LP
By: Urban Settlement Services, LLC, its attorney in fact

By: _____    Dated: _____

Name:
Title :

(page 10 of 10 pages)



81-416298

PKG_2/C3_3477-6